# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| TRACEY WATKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | |
| EASY STEP ENTERPRISES, LLC d/b/a ) | |
| THE GOOD FEET STORE, ) | JURY TRIAL DEMANDED |
| ) | |
| Defendant. ) | |

## COMPLAINT

### STATEMENT OF JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to its general original jurisdiction and under other statutory authority. This is a suit authorized and instituted pursuant to 42 U.S.C. § 2000e, et seq, known as Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and 42 U.S.C. § 1981.

2. This Court has original jurisdiction, pursuant to 28 U.S.C. § 1331, as this civil action arises under the laws of the United States cited above. This Court also has original jurisdiction, pursuant to 28 U.S.C. § 1343(a); as this civil action seeks to secure the protection of, and redress the deprivation of, rights secured by Title VII and 42 U.S.C. § 1981, providing for injunctive and other relief against discrimination and retaliation.

3. Venue is proper in this district, pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in Montgomery County located in this judicial district.

4. Plaintiff has fulfilled all conditions precedent to the institution of this action, as required under Title VII.

**STATEMENT OF THE PARTIES**

5. Plaintiff Tracey Watkins (hereinafter referred to as "Plaintiff" or "Watkins") is an African-American female over the age of nineteen (19) years. She is a resident of the State of Alabama. At all times relevant to this Complaint, Plaintiff was an employee of the named defendant.

6. Defendant Easy Step Enterprises, LLC d/b/a The Good Feet Store (hereinafter "Defendant" or "Good Feet") is an entity subject to suit under Title VII and 42 U.S.C. § 1981. At all times relevant herein, Defendant was Plaintiff's employer.

**STATEMENT OF THE FACTS**

7. Plaintiff is an African-American female.

8. On or around September 6, 2022, Plaintiff began working for Good Feet as an assistant store manager. Due to her excellent sales and production numbers, Plaintiff was given the additional role of corporate store trainer. For approximately the first year of her employment, everything went smoothly for Plaintiff.

9. Unfortunately though, in or near 2023, things began to change. More specifically, in or near 2023, Easy Step Enterprises purchased The Good Feet Store. Following the purchase of the company, a new Chief Executive Officer ("CEO") took over—Jonathan Cotten ("Cotten").

10. In or near late-January, 2024 to early-February, 2024, Cotten organized a business trip for all Good Feet employees—including Plaintiff—in Virginia, where the company is based.

11. During that outing, employees such as Plaintiff were instructed to walk on trails that, according to Cotten, were used by "slaves" when they were "running toward freedom." Understandably, Plaintiff and the rest of the employees (who were primarily Black) were shocked and taken aback at this statement and instruction.

12. Sadly, Cotten did not stop the racial harassment and humiliation there. During that same outing, Cotten held a conference where he stood on stage and addressed all the employees, including Plaintiff. When Cotten walked on stage, he carried an extremely large chain and loudly dragged it across the stage as he walked. Cotten explained to the confused employees that the large chain he was carrying was in fact a "slave chain." Cotten then threw the chain down and declared himself the "chain breaker." Plaintiff and other Black employees were shocked and offended at this egregious action.

13. Yet, despite the look of horror on Plaintiff's and other Black employees' faces, Cotten continued the harassment campaign unabashedly. He brought a small, crate-like box which he dragged to the middle of the stage and proudly stated that it was the same or similar box that the "escaped slave, Henry Box Brown, used to ship himself to freedom from the confederate south." Even more appallingly, Cotten then asked a Black male to come on stage and place himself inside the box.

14. Plaintiff and other Black employees felt humiliated, degraded, harassed, and offended. More specifically, Plaintiff felt that Cotten engaged in these repulsive actions so that she and other Black employees would feel lesser than the Caucasian employees and that they would view Cotten as their "savior." As a result, Plaintiff and other Black employees complained to the company about the abhorrent actions that took place. Ultimately, Cotten issued an apology and promised to visit each of the stores in Alabama (primarily ran by Black managers) to apologize in person and to discuss measures he would take to be more "racially sensitive." However, that never happened.

15. Rather, Plaintiff and other Black employees were each targeted for retaliation following their complaints of what they believed to be severe racial harassment. More specifically,

Good Feet began firing Black employees for bogus reasons and replacing them with lesser qualified white employees.

16. As it relates to Plaintiff, shortly after her last complaint about Cotten, Good Feet forced Plaintiff's store location to hire a white male as an entry level associate—Alan Bagby ('Bagby"). Shortly after Bagby arrived, he immediately was sent to the company's headquarters in Virginia. Upon his return, Plaintiff noticed that Bagby seemed like a different person. Bagby would tell Black managers that he wanted their jobs—specifically, Bagby told Plaintiff that he was "coming" for her job. Bagby did not make this statement to any white employee or manager.

17. Plaintiff was taken aback and explained to Bagby that he could be eligible for promotion, provided that he performs well. Bagby dismissed Plaintiff, seeming confident that he would take her job. Unfortunately, that proved to be true.

18. Not long after Plaintiff's final complaint of racial discrimination, Good Feet fired Plaintiff and cited performance issues and accusations that she spoke "poorly" about the company as the reasons for termination. However, those reasons reek of pretext. The reality is that Plaintiff had no performance issues; rather, she was among the top salespeople in the entire region. Moreover, Plaintiff never spoke "poorly" about the company. Instead, she complained repeatedly about Cotten's repulsive actions and how she perceived them to be racially discriminatory.

19. Shortly after Good Feet fired Plaintiff, Good Feet quickly violated its own policy and promoted Bagby to be her replacement—a lesser qualified white male with a sordid background. More specifically, Good Feet had a six month policy in which employees were to remain in their positions before being considered for promotion that was violated in order to replace Plaintiff with Bagby.

20. Indeed, the fact remains that Good Feet terminated Plaintiff simply because she is a Black female who spoke out against discrimination. Good Feet then promptly replaced Plaintiff with a white male.

**FIRST CAUSE OF ACTION**
**Gender Discrimination—Disparate Treatment**
**under 42 U.S.C. § 2000e, et seq.**

21. Plaintiff re-alleges and incorporates by reference paragraph nos. 7-20 with the same force and effect as if fully set forth herein and further states as follows:

22. Plaintiff is an African-American female.

23. Plaintiff was qualified for her position as assistant store manager and corporate store trainer. More specifically, Plaintiff's sales and production numbers were consistently high, and she was among the top salespeople in the entire region.

24. Despite this, Plaintiff suffered an adverse employment action when Good Feet terminated her.

25. In an act of blatant discrimination, Good Feet violated its own policy and promoted a much lesser qualified entry level white male employee with a sordid background to replace Plaintiff.

26. Defendant, through the conduct of its agents, has violated Plaintiff's rights under Title VII.

27. As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

## SECOND CAUSE OF ACTION
### Race Discrimination—Disparate Treatment
### under 42 U.S.C. § 2000e, et seq.; and 42 U.S.C. § 1981

28. Plaintiff re-alleges and incorporates by reference paragraph nos. 7-20 with the same force and effect as if fully set forth herein and further states as follows:

29. Plaintiff is an African-American female.

30. Plaintiff was treated much less favorably than her non-Black counterparts. More specifically, Good Feet's CEO, Jonathan Cotten, humiliated and degraded Plaintiff and other Black employees by instructing them to walk on trails that, according to Cotten, were used by "slaves" when they were "running toward freedom." Moreover, Cotten walked on the conference stage and carried an extremely large chain and loudly dragged it across the stage as he walked calling it a "slave chain," before throwing it down and declaring himself the "chain breaker." Finally, and perhaps most horrendous, Cotten asked a Black male to come on stage and place himself inside a small, crate-like box, which he proudly stated that it was the same or similar box that the "escaped slave, Henry Box Brown, used to ship himself to freedom from the confederate south." White employees were not subject to such publicly degrading treatment.

31. Moreover, Plaintiff was qualified for her position as assistant store manager and corporate store trainer. More specifically, Plaintiff's sales and production numbers were consistently high, and she was among the top salespeople in the entire region.

32. Despite this, Plaintiff suffered an adverse employment action when Good Feet terminated her.

33. In an act of blatant discrimination, Good Feet violated its own policy and promoted a much lesser qualified entry level white male employee with a sordid background to replace Plaintiff.

6

34. Defendant, through the conduct of its agents, has violated Plaintiff's rights under Title VII and 42 U.S.C. § 1981.

35. As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

### THIRD CAUSE OF ACTION
### Race Discrimination—Racially Hostile Work Environment
### under 42 U.S.C. § 2000e, et seq.; and 42 U.S.C. § 1981

36. Plaintiff re-alleges and incorporates by reference paragraph nos. 7-20 with the same force and effect as if fully set forth herein and further states as follows:

37. Plaintiff is an African-American female.

38. Plaintiff was subjected to unwelcome harassment by Defendant that was based on her race. More specifically, Good Feet's CEO, Jonathan Cotten, humiliated and degraded Plaintiff and other Black employees by instructing them to walk on trails that, according to Cotten, were used by "slaves" when they were "running toward freedom." Moreover, Cotten walked on the conference stage and carried an extremely large chain and loudly dragged it across the stage as he walked calling it a "slave chain," before throwing it down and declaring himself the "chain breaker." Finally, and perhaps most horrendous, Cotten asked a Black male to come on stage and place himself inside a small, crate-like box, which he proudly stated that it was the same or similar box that the "escaped slave, Henry Box Brown, used to ship himself to freedom from the confederate south." White employees were not subject to such publicly degrading treatment.

39. This harassment was severe or pervasive enough to adversely affect a term, condition, or privilege of Plaintiff's employment because she had to endure being degraded due to

her race each day she went into work and ultimately terminated and replaced with a lesser qualified white male.

40. Defendant, through the conduct of its agents, has violated Plaintiff's rights under Title VII and 42 U.S.C. § 1981.

41. As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

### FOURTH CAUSE OF ACTION
### Retaliation
### under 42 U.S.C. § 1981

42. Plaintiff re-alleges and incorporates by reference paragraph nos. 7-20 with the same force and effect as if fully set forth herein and further states as follows:

43. Plaintiff had a good faith, reasonable belief that she was being treated less favorably than her similarly situated white counterparts.

44. Plaintiff engaged in protected activity on multiple occasions by means of reporting the racially hostile actions by the CEO, Jonathan Cotten, on a daily or near daily basis. However, it was to no avail. The last time Plaintiff complained about race discrimination was shortly before her termination.

45. Not only did Defendant fail to take any sort of remedial or corrective action, but it decided to terminate Plaintiff's employment following her protected complaints. Specifically,

Good Feet cited performance issues and accusations that Plaintiff spoke "poorly" about the company as the reasons for termination. However, those reasons reek of pretext. The reality is that Plaintiff had no performance issues; rather, she was among the top salespeople in the entire region. Moreover, Plaintiff never spoke "poorly" about the company. Instead, she complained repeatedly about Cotten's repulsive actions and how she perceived them to be racially discriminatory.

46. Defendant, through the conduct of its agents, has violated Plaintiff's rights under 42 U.S.C. § 1981.

47. As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays this Court will assume jurisdiction of this action and, after trial, provide relief as follows:

1. Issue a declaratory judgment that the employment practices, policies, procedures, conditions and customs that led to the discrimination and retaliation by Defendant are violative of the rights of Plaintiff as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. § 2000e, et seq., the Civil Rights Act of 1991 and 42 U.S.C. § 1981.

2. Grant Plaintiff a permanent injunction enjoining Defendant, its respective agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act

of 1964," as amended," 42 U.S.C. § 2000e, et seq., the Civil Rights Act of 1991 and 42 U.S.C. § 1981.

3. Enter an Order requiring Defendant to make Plaintiff whole by awarding Plaintiff back pay (plus interest), reinstatement or front pay in lieu thereof, compensation for loss of wages and benefits, lost seniority, and pension benefits and nominal, compensatory and punitive damages.

4. Plaintiff further prays for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and expenses incurred by this litigation.

5. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief, is the only means of securing adequate relief.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY
ON ALL ISSUES TRIABLE BY JURY**

Respectfully submitted,

*/s/Nicki Lawsen*
Sidney Jackson
Samuel Fisher
Nicki Lawsen
*Attorneys for the Plaintiff*
**Wiggins, Childs, Pantazis, Fisher & Goldfarb, LLC**
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
sjackson@wigginschilds.com
sf@wigginschilds.com
nlawsen@wigginschilds.com

**Notice of Lawsuit and Request for Waiver of Service to Be Sent by Certified Mail to the Following:**

Easy Step Enterprises, LLC
c/o C T Corporation System
2 North Jackson Street
Suite 605
Montgomery, Alabama 36104