IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
TRACEY WATKINS,              )
                             )
        Plaintiff,           )
                             )    CIVIL ACTION NO.
        v.                   )     2:25cv620-MHT
                             )        (WO)
EASY STEP ENTERPRISES, LLC   )
d/b/a The Good Feet Store,   )
                             )
        Defendant.           )
```

OPINION AND ORDER

Plaintiff Tracey Watkins brings this employment-discrimination lawsuit against her former employer, defendant Easy Step Enterprises, LLC d/b/a The Good Feet Store, asserting claims of sex and race discrimination and retaliation. She rests her claims on two statutes: Title VII (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a and 2000e through 2000e-17); and § 1981 (originally part of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981). Jurisdiction is proper under 28 U.S.C. § 1331 (federal

question), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. § 2000e-5(f)(3) (Title VII).

This litigation is now before the court on Watkins's motion for leave to file an amended complaint, which would add three new plaintiffs and clarify certain facts. For the following reasons, the motion will be granted.

## I. WATKINS'S ORIGINAL COMPLAINT

Watkins asserts four counts in her original complaint. Count one asserts a claim of disparate treatment on the basis of gender under Title VII; count two asserts a claim of disparate treatment on the basis of race under Title VII and § 1981; count three raises a racially hostile-work environment claim under Title VII and § 1981; and count four raises a retaliation claim under § 1981.

The facts alleged in Watkins's original complaint are as follows. Watkins, according to her complaint, is "an African-American female." Compl. (Doc. 1) ¶ 5. She

2

began working at The Good Feet Store as an assistant store manager around September 2022. Because of "her excellent sales and production numbers," she was given "the additional role of corporate store trainer." *Id*. ¶ 8.

In or around 2023, Easy Step purchased The Good Feet Store. At some later point, Jonathan Cotten became the new chief executive officer (CEO). Around February 2024, he organized a staff retreat in Virginia, where the company is headquartered, for all employees.

During the outing, Cotten instructed employees to walk on trails he described as having been used by "slaves" as they were "running toward freedom." *Id.* ¶ 11. He also held an assembly where he walked onto a stage carrying a very large chain which he then dragged across the stage while walking. He told the employees that it was a "slave chain," threw the chain down, and announced that he was "the chain breaker." *Id*. ¶ 12. He then dragged a small, crate-like box onto the stage and

3

told the audience that it was or resembled the box that the "escaped slave, Henry Box Brown, used to ship himself to freedom from the confederate south." *Id*. ¶ 13. "Cotten then asked a Black male to come on stage and place himself inside the box." *Id*.

Watkins "and the rest of the employees (who were primarily Black)" were "shocked and taken aback," "offended," "humiliated," "degraded," and "harassed." *Id*. ¶¶ 11-13. Watkins "felt that Cotten engaged in these repulsive actions so that she and other Black employees would feel lesser than the Caucasian employees and ... view Cotten as their 'savior.'" *Id*. ¶ 14.

Watkins and "other Black employees complained to the company about the abhorrent actions that took place." *Id*. In response, "Cotten issued an apology and promised to visit each of the stores in Alabama (primarily ran by Black managers) to apologize in person and to discuss measures he would take to be more 'racially sensitive.'" *Id*. Cotten never made these visits.

4

Easy Step then began "firing Black employees for bogus reasons and replacing them with less[] qualified white employees." *Id*. ¶ 15. In Watkins's store, shortly after her final complaint about Cotten, Easy Step ordered the store management to "hire a white male as an entry level associate." *Id.* ¶ 16. Alan Bagby was hired. Soon after his arrival at the store, Bagby was sent to the company headquarters in Virginia. When he returned, Watkins felt his attitude had changed. "Bagby would tell Black managers that he wanted their jobs--specifically, Bagby told [Watkins] that he was 'coming' for her job. Bagby did not make the statements to any white employee or manager." *Id*.

In response to his statement about coming for her job, Watkins told Bagby that he could be eligible for a promotion depending on his job performance. Bagby responded in a dismissive manner, and appeared "confident that he would take her job." *Id.* ¶ 17.

.

Watkins was fired soon after. Easy Step told Watkins that she was terminated because she had performance issues and had been speaking "poorly" about the company. *Id*. ¶ 18. However, Watkins was a top salesperson in the region and never spoke poorly of the company. She complained only that she felt Cotten's actions were racially discriminatory.

After Watkins's termination, Easy Step promoted Bagby to fill her position. This promotion violated Easy Step's policy of requiring employees to have been in their current position for six months before being considered for promotion. And the company did so despite Bagby's having both fewer qualifications than Watkins and a "sordid background." *Id*. ¶ 19.

Watkins contends that Easy Step terminated her in retaliation for her complaints about Cotten, and that the reasons given were pretextual. She also contends that Cotten's actions at the retreat created a racially hostile-work environment because she had to endure being

degraded due to her race each day she went into work. Watkins further contends that her firing and replacement by Bagby amounted to racial and gender discrimination.

## II. THE PROPOSED AMENDED COMPLAINT

With the proposed amended complaint, Watkins seeks to add three new plaintiffs to this litigation and to clarify certain factual allegations regarding her claims. Proposed plaintiffs Brandon Colvin, Jennifer Cowart, and Barrian Flowers are also African-American former managers at Easy Step stores in Alabama. Like Watkins, they bring claims for race-based disparate treatment, a racially hostile-work environment, and retaliation for their complaints about Cotten, though they proceed under only § 1981, not Title VII.

According to the proposed amended complaint, all of the proposed plaintiffs were present at the Virginia staff retreat and witnessed the conduct described earlier. All of them subsequently complained about the

7

incident to management and to Cotten himself.   They then all received a written apology from Cotten, who promised to take corrective "racial sensitivity" measures and visit their stores to apologize personally.   Proposed Am. Compl. (Doc. 11-1) ¶ 15.   Cotten did not follow through on these promises.

Instead, in the following year or so, African-American managers who had complained about Cotten's actions received heightened scrutiny and unwarranted questions about their decision making.   They were also subjected to "standards not applied to white managers in other regions" and baseless criticisms of their performance.   *Id.* ¶ 38.   In the year or so following the retreat, Easy Step "terminated nearly every Black manager and store trainer in Alabama who had objected to Cotten's conduct" and replaced them with "less[] qualified white employees."   *Id.* ¶ 40.

Proposed plaintiff Colvin was plaintiff Watkins's supervisor.   Prior to Watkins's termination, Easy Step's

8

Human Resources Department directed Colvin to interview Bagby, the previously discussed "less[] qualified white male with a sordid background," despite the fact that Bagby had failed to appear for his scheduled interview and had not provided a valid reason for missing it. *Id.* ¶ 30. Colvin objected but was overruled. Human Resources hired Bagby over Colvin's objections.

Shortly thereafter, Human Resources terminated Watkins and soon directed Colvin to promote Bagby into Watkins's old assistant manager position. Colvin objected strongly to Bagby's being promoted and informed Human Resources that Bagby should not be promoted because he had not completed training, was not performing well, and had not been employed long enough for promotion under company policy. He was overruled and Bagby was promoted. In February 2025, Easy Step terminated Colvin and promoted Bagby to his old position of store manager. Bagby still had not yet reached six months of employment with Easy Step.

Proposed plaintiff Cowart worked as an area manager for Easy Step. She managed the locations where Watkins and the other proposed plaintiffs worked, and she met performance metrics consistently. Following the Viriginia retreat, she filed complaints with Human Resources about Cotten's behavior, contending that his conduct created a racially hostile environment. As stated, Cotten apologized for his conduct. In the months that followed, Cowart began to experience heightened scrutiny, and Human Resources told her that she wielded "too much influence" over the Alabama management team. *Id.* ¶ 38. Around the summer of 2024, she was terminated for false reasons.

Lastly, proposed plaintiff Flowers was an assistant manager and corporate training manager at Easy Step's Mobile, Alabama location. He had no performance problems and had experience as a manager in corporate and franchise-level roles. After his supervisor was terminated, Flowers was not informed of the official

opening of the manager's position or given an opportunity to apply for it, despite his qualifications for the position. He learned that the position was available when an external party contacted the store about the position. Flowers contacted the area manager to discuss applying for the position. In response, the area manager, "a white female, informed him that she had already selected and hired" someone to fill the role. *Id.* ¶ 24. The person hired for the position was "a white male with no prior management experience." *Id.* ¶ 25. Flowers was directed to train his new manager.

Flowers objected to management and expressed his concern that Easy Step had passed him over for a promotion despite being a qualified candidate. He also expressed concern that Easy Step had been firing and passing over African-American managers since the Virginia retreat. Flowers did not receive a direct response to his objection but was told that he was still expected to come in to work and train his new supervisor. Feeling

11

defeated, Flowers felt he had no choice but to resign and did so around April 2025.

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 15(a)(1), "[a] party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), ... whichever is earlier." Fed. R. Civ. P. 15(a)(1). In other circumstances, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Federal Rule of Civil Procedure 20 provides for the permissive joinder of parties. "Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with

respect to or arising out of the same transaction,
occurrence, or series of transactions or occurrences; and
(B) any question of law or fact common to all plaintiffs
will arise in the action."  Fed. R. Civ. P. 20(a)(1).


## IV. DISCUSSION

Watkins contends that she should be allowed to amend
her complaint to clarify certain facts and add three new
plaintiffs.  She asserts that she meets the requirements
for amendment both as a matter of course under Rule 15,
and because joinder of the proposed plaintiffs' claims
is proper under the requirements for permissive joinder
in Rule 20.  Easy Step does not directly address the
propriety of amendment under Rule 15.  Easy Step solely
argues that Watkins's motion for leave to amend should
be denied because the proposed amended complaint does not
meet the permissive joinder requirements of Rule 20.

13

## A. Rule 15

The court first addresses whether Watkins's request to amend is permitted under Rule 15 as a matter of course. As noted above, a plaintiff may amend her complaint once as a matter of course within 21 days of service of the complaint, or within 21 days of service of a responsive pleading or motion to dismiss. Watkins filed her complaint on August 7, 2025, and sent Easy Step a request for waiver of service the same day. The signed waiver of service was due on September 8, but Easy Step did not submit it by that date. On September 30, Easy Step moved for permission to file its waiver of service and responsive pleading on October 27, and the court granted the motion. On October 26, the day before the responsive pleading was due, Watkins moved for leave to file a first amended complaint to add additional plaintiffs, and attached the amended complaint to the motion.

Easy Step still has not filed its executed waiver of service, and so service has not yet been perfected.

**14**

Watkins's motion and attached amended complaint were filed before Easy Step filed a responsive pleading or motion to dismiss. Therefore, the time to amend the complaint as a matter of course had not run when Watkins filed the motion and amendment, and amendment as a matter of course was permissible.

However, when a plaintiff who has the right to amend as a matter of course files a motion for leave to amend the complaint, the plaintiff has "waived the right to amend as a matter of course" and, instead, is viewed as "invit[ing] the District Court to review [the] proposed amendment[]." *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010). The district court may then, at its discretion, decide to "accept[] the invitation." *Id.* As the issues have been fully briefed and the propriety of joinder has been raised, this court chooses to review the propriety of the proposed amendment here.

When reviewing a Rule 15 motion for leave to amend, "[t]he court should freely give leave [to amend] when

15

justice so requires." Fed. R. Civ. P. 15(a)(2). That said, "the liberal amendment policy prescribed by Rule 15 does not mean that leave will be granted in all cases. Indeed, in determining whether 'justice so requires' that leave to amend be granted, district courts may consider ... factors such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Jeter v. Montgomery Cnty.*, 480 F. Supp. 2d 1293, 1297 (M.D. Ala. 2007) (Thompson, J.) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation omitted)).

Here, Easy Step does not contend that there is undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies, that the amendment would cause undue prejudice to it, or that amendment would be futile. The court sees no evidence of such barriers to amendment. Further, because the proposed plaintiffs are seeking to

16

join federal claims, granting the amendment would not
affect the court's jurisdiction over the claim.
Considering the early stage of the litigation, the court
finds that granting Watkins's amendment is permissible
under Rule 15.


## B. Rule 20

However, determining whether to grant a motion to
amend to join additional plaintiffs requires
consideration of both the general principles of amendment
provided by Rule 15(a) and the more specific joinder
provisions of Rule 20(a). *See Hinson v. Norwest Fin.
S.C., Inc.,* 239 F.3d 611, 618 (4th Cir. 2001) (citing
*Desert Empire Bank v. Ins. Co.,* 623 F.2d 1371, 1374 (9th
Cir. 1980) (noting that both Rule 15 and Rule 20 standards
are implicated by a motion to amend pleadings to add a
new party)).

The court, therefore, turns to whether the proposed
plaintiffs' claims meet the requirements of Rule 20.

Rule 20 allows for the joinder of additional plaintiffs if the claims are made "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and the claims raise common questions of law and fact.  Fed. R. Civ. P. 20(a)(1).

Under Rule 20(a)(1)(A), a transaction or occurrence is a flexible label intended to encompass logically related events. *See Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003). Generally, "all 'logically related' events entitling a person to institute a legal action against another are ... regarded as comprising a transaction or occurrence" for the purposes of permissive joinder. *Id.* (quoting *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)).

Easy Step maintains that the proposed plaintiffs' claims do not arise out of the same transaction, occurrence, or series of transactions or occurrences

18

because they worked in different locations, under different supervision, and allege different adverse-employment actions.* *See* Def.'s Resp. in Opp'n (Doc. 16) at 6. The court disagrees.

In *Alexander*, 207 F.3d at 1324, the court held that the same transaction requirement of Rule 20(a) may be satisfied where plaintiffs allege a systemic pattern or practice of race-based discrimination. Here, Watkins and the proposed plaintiffs allege such a pattern of discrimination. *See* Proposed First Am. Compl. (Doc. 11-1) at ¶ 15 ("[B]eginning in or near February, 2024 and continuing through April, 2024, [Easy Step] embarked on a pattern of retaliation and systematic removal of Black managers across its Alabama stores.").

---

* Easy Step also argues that all adverse-employment actions against Watkins and the proposed plaintiffs occurred after individual assessments based on factors that did not include race. *See* Def.'s Resp. in Opp'n (Doc. 16) at 6. As this argument raises a factual defense that is unsupported and improper at this stage of the case, the court rejects the argument.

Based on the allegations of the proposed amended complaint, the adverse-employment actions taken against Watkins and the proposed plaintiffs stemmed from the same distinct root cause--the complaints of racial discrimination they lodged against Easy Step CEO Jonathan Cotten. Their claims are linked because they all complained directly to management about their CEO's behavior at the Virgina retreat and then suffered adverse-employment actions at the direction of the same Human Resources Department. Watkins and the proposed plaintiffs have plausibly raised an inference that Easy Step had a pattern or practice of discriminating against African-American employees who complained about racial discrimination in the workplace, and that their retaliatory adverse-employment outcomes were a result of this pattern or practice. *See Mosley, 497 F.2d* at 1333-34 (holding that "a company-wide policy purportedly designed to discriminate against blacks in employment" can satisfy Rule 20's same transaction requirement).

Moreover, the overlap between Watkins's claim and
those of the proposed plaintiffs is considerable.
Watkins and proposed plaintiff Colvin worked in the same
location and were both replaced by the same "less[]
qualified white male with a sordid background." Proposed
First Am. Compl. (Doc. 11-1) at ¶ 52. Proposed plaintiff
Cowart had a supervisory role over Watkins and the other
proposed plaintiffs' stores. After her termination, she
was also replaced by a "less[] qualified white female."
*Id.*

As Easy Step highlights, there are differences in
the proposed plaintiffs' claims. For example, unlike
Watkins and the rest, proposed plaintiff Flowers was not
terminated; he was simply not informed of an opportunity
to apply for the position opened by the termination of
his direct supervisor. *See* Def.'s Resp. in Opp'n
(Doc. 16) at 8. However, his resignation came after he
was overlooked for a promotion by the company, which he
alleges was also part of Easy Step's pattern or practice

of racial discrimination. Flowers also complained to
management about the CEO's behavior at the staff retreat
and argues that he was overlooked for a promotion in
retaliation for the complaint. Differences exist in the
details of the claims, but the relationship between the
proposed plaintiffs and Watkins, as well as the overlap
among their allegations, suggests that their claims are
logically related and constitute a transaction or
occurrence under Rule 20.

The court now turns to whether the proposed
plaintiffs' claims satisfy Rule 20's commonality
requirement. Rule 20's commonality requirement states
that plaintiffs may be added to a lawsuit if questions
of law or fact common to all plaintiffs will be raised
in the litigation. *See* Fed. R. Civ. P. 20(a)(1).

Easy Step argues that because the proposed plaintiffs
experienced different adverse-employment actions at
different times and under different direct supervisors,
the factual and legal questions of each case are not

22

common. *See* Def.'s Resp. in Opp'n (Doc. 16) at 12-13.
Easy Step also argues that because Watkins and the
proposed plaintiffs worked in different Easy Step stores
across Alabama, their claims will require different
witnesses and evidence at trial, also defeating
commonality. *See id.* Easy Step further notes that the
adverse-employment actions that the proposed plaintiffs
experienced occurred several months before and after
Watkins's termination. *See id.* At the crux of Easy
Step's argument is their assertion that the Virginia
company retreat is being used a "red herring attempting
to connect unrelated fact patterns for employees" with
unrelated claims and circumstances. *See id.* at 10.
Watkins responds that common questions of law and fact
exist here because "the same [Human Resources] personnel"
and "the same corporate decisionmakers" were involved in
the adverse-employment actions the proposed plaintiffs
experienced, despite their being managed by different
direct supervisors. Pl.'s Resp. (Doc. 18) at 6.

Easy Step is correct in noting that litigation of the proposed plaintiffs' claims will require inquiry into separate facts regarding their work history and performance. Yet under Rule 20, the proposed plaintiffs need not show that their claims are *identical*. Instead, they are required to show that some of the questions of law or fact arising from their claims are *common*. *See Alexander*, 207 F.3d at 1324 ("The fact that the Plaintiffs suffered different effects--in this case, discrimination in promotions, transfers, assignments, or discipline--from the alleged policy of discrimination [does] not preclude the trial court from finding a common question of law and fact."). While the events at issue occurred over a 14-month period of time, Watkins and the proposed plaintiffs are alleging a pattern of behavior that was repeated and continuous from the Virginia retreat around February 2024 until Flowers left Easy Step around April 2025. Watkins and the proposed plaintiffs claim that in those roughly 14 months, Easy Step

24

terminated nearly every African-American manager and
store trainer in Alabama who had complained about
Cotten's actions at the retreat. They also claim that
Easy Step replaced them all with "less[] qualified white
employees." Proposed Am. Compl. ¶ 4. Considering the
continuous nature of the alleged discrimination and
retaliation, the court finds that the time between the
adverse-employment actions the proposed plaintiffs
experienced does not render the events too unrelated or
isolated from one another to present common issues. *See
Alexander*, 207 F.3d at 1324 (holding that transactions
spanning a supervisor's first year in office occurred
over "the same short time frame" and were sufficiently
related).

Taken together, the factual allegations of the
proposed amended complaint raise a plausible inference
that Easy Step had a practice or policy of racial
discrimination and retaliation. *See Grayson v. K Mart
Corp.*, 79 F.3d 1086, 1095-96 (11th Cir.1996) (suggesting

that "a unified policy, plan, or scheme of discrimination" can satisfy Rule 20's commonality requirement). Considering this, Watkins and the proposed plaintiffs' claims satisfy the commonality requirement of Rule 20.

It has long been recognized that joinder is "strongly encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966). Under the Federal Rules of Civil Procedure, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties." *Id.* With this direction in mind and for the above reasons, Watkins's motion for leave to amend and add three new plaintiffs will be granted. Joinder is also warranted at this stage because it promotes judicial economy. Because all of the proposed plaintiffs allege systemic discrimination, it appears at this stage that the evidence submitted by one party will be relevant to the claims of the others. *See Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1285 (11th Cir. 2008) (holding that

evidence of racial discrimination and retaliation against coworkers was admissible evidence in support of the plaintiff's own claim of discrimination).  The court emphasizes that it has found only that Watkins may file the proposed amended complaint.  Whether the evidence ultimately supports the allegations in the amended complaint, and whether joinder remains appropriate after discovery, remains to be seen.  The parties can always move to sever later if necessary.

* * *

Accordingly, it is ORDERED that:

(1) Plaintiff Tracey Watkins's motion for leave to amend (Doc. 11) is granted.

(2) The plaintiffs shall file the proposed amended complaint within three business days of today.

DONE, this the 18th day of February, 2026.

   /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE